**Christine Holt SPINELLI,**
**Plaintiff–Appellant,**

v.

**Michael GAUGHAN et al.,**
**Defendants–Appellees.**

**No. 92–15428.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 13, 1993.

Decided Dec. 9, 1993.

---

Richard G. McCracken and Michael T. Anderson, McCracken, Stemerman, Bowen & Holsberry, and Davis, Cowell & Bowe, San Francisco, CA, for plaintiff-appellant.

Carl E. Lovell, Jr., Las Vegas, NV, and Joel I. Keiler, Reston, VA, for defendants-appellees.

Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.

KOZINSKI, Circuit Judge.

Appellant Christine Holt Spinelli sued claiming she was fired in retaliation for exercising her rights under ERISA. We consider whether she was entitled to a jury trial.

I

Prior to her discharge, Spinelli served as a bartender at the Gold Coast Hotel and Casino in Las Vegas, Nevada. On July 19, twelve days before being fired, she wrote a letter to Michael Gaughan, the managing partner of Gold Coast. In this letter, Spinelli sought certain information about the health plan serving Gold Coast's employees. A return receipt shows Spinelli's letter arrived on July 26. On July 31, she was fired. She never received a response to her letter.

■ In the district court, Spinelli claimed that the timing was more than a coincidence, that she was fired for calling her employer to task about employee benefits. The employer responded that Spinelli was fired for legitimate reasons which we need not discuss here. Suffice it to say the record amply supports the district court's finding that Spinelli was not discharged in retaliation for exercising rights under ERISA, although it would have supported a contrary finding as well. Since there was, so to speak, a horse race, it became significant who the trier of fact was. Spinelli made a proper jury demand but the district judge set the case for a bench trial, relying on our cases which held that jury trials are generally unavailable under ERISA. *Nevill v. Shell Oil Co.,* 835 F.2d 209, 212–13 (9th Cir.1987); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1357 (9th Cir.

1985). Spinelli asks us to reconsider these cases in light of intervening Supreme Court decisions interpreting the Seventh Amendment. *See, e.g., Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).[1]

II

■ The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. CONST. amend. VII. It's not always clear what amounts to a "Suit[ ] at common law" within the meaning of the Seventh Amendment. We know, though, that the jury right is not limited to actions that actually existed at common law, but extends to actions analogous thereto. *Tull,* 481 U.S. at 417, 107 S.Ct. at 1835.

■ In a recent series of cases, the Supreme Court has provided a methodology for determining whether rights created, modified or preempted by federal statutes are analogous to those existing at common law. First, the Court has said, we must look at the nature of the right to determine whether it is analogous to common law rights. *Terry,* 494 U.S. at 565, 110 S.Ct. at 1344–45. Second, we must examine the remedies provided to see whether they are legal or equitable in nature. *Id.* As the Supreme Court has told us four times, the latter inquiry is the more important. *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790 ("The second stage of this analysis is more important than the first."); *Terry,* 494 U.S. at 565, 110 S.Ct. at 1344–45 ("The second inquiry is the more important in our analysis."); *Tull,* 481 U.S. at 421, 107 S.Ct. at 1837 (quoting *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d

1. Although a panel of this court cannot overrule Ninth Circuit precedent, *see Atonio v. Wards Cove Packing Co.,* 810 F.2d 1477, 1478 (1987) (en banc), *rev'd in part on other grounds,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), we will nevertheless reconsider past cases in light of an intervening decision of the Supreme Court. *See, e.g., Grunwald v. San Bernardino City Unified Sch. Dist.,* 994 F.2d 1370, 1375 n. 4 (9th Cir. 1993) (declining to follow language in Ninth Circuit opinion because "its precedential effect has been dissipated by the Supreme Court's intervening ruling in [*Chicago Teachers Union, Local No. 1 v.*] *Hudson* [475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232]").

260 (1974)) ("We reiterate our previously expressed view that characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial."); *Curtis,* 415 U.S. at 195–96, 94 S.Ct. at 1008–09 ("[T]his cause of action is analogous to a number of tort actions recognized at common law. *More important, the relief sought here*—actual and punitive damages—is the traditional form of relief *offered in the courts of law.*") (emphasis added) (footnotes omitted).

### III

■ ERISA section 510 makes it "unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...." 29 U.S.C. § 1140. To enforce these rights, section 510 incorporates the remedies of section 502, which in turn authorizes an aggrieved participant or beneficiary to bring a civil action "(A) to enjoin any [violative] act or practice ..., or (B) to obtain other appropriate equitable relief...." *Id.* § 1132(a)(3). Following the Supreme Court's guidance, we ask two questions: First, is the action analogous to a common law action? Second, are the remedies legal or equitable?

### A. Nature of the Action

In the few Supreme Court cases classifying a particular action as legal or equitable, the Court has generally looked for an analogy to some action known when the Seventh Amendment was adopted. *See, e.g., Terry,* 494 U.S. at 566, 110 S.Ct. at 1345 ("We must therefore look for an analogous cause of action that existed in the 18th century to determine whether the nature of this duty of fair representation suit is legal or equitable."); *Granfinanciera,* 492 U.S. at 43, 109 S.Ct. at 2790–91 ("There is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England."); *Tull,* 481 U.S. at 418, 107 S.Ct. at 1835–36 ("Petitioner analogizes this Government suit under § 1319(d) to an action in debt within the jurisdiction of English courts of law.").

■ Although analogizing to eighteenth-century actions is certainly one way to classify an action as legal or equitable, we believe it is not the only way. After all, the common law is not static. By its nature, it adapts to changing circumstances, creating new causes of action as they become necessary, discarding old ones as they become obsolete. *See* Oliver Wendell Holmes, Jr., *The Common Law* 1 (1881) ("The law embodies the story of a nation's development through many centuries...."); *cf.* Melvin Aron Eisenberg, *The Nature of the Common Law* 154–61 (1988) (discussing "generative theory" of common law). Thus in the first part of Seventh Amendment analysis, we should consider not only whether an action is analogous to a common law claim known in the eighteenth century, but also to one known today.

Spinelli claims she was improperly discharged in retaliation for exercising rights given to her by a federal statute. She could not have made such a claim during the eighteenth century, a time when employment relationships were largely at will. The cause of action for retaliatory discharge is, rather, a creature of the twentieth century, and the latter part of it at that. *See* Sara A. Corello, *In–House Counsel's Right to Sue for Retaliatory Discharge,* 92 Colum.L.Rev. 389, 394 (1992) (discussing *Petermann v. International Bhd. of Teamsters Local 396,* 174 Cal. App.2d 184, 344 P.2d 25, 27 (1959), the "first retaliatory discharge case"). We could, of course, contrive some analogy to claims existing in the eighteenth century, but the comparison would be far-fetched and unsatisfactory.[2]

---

**2.** For example, we could analogize section 510 to an equitable action for breach of fiduciary duty—since section 510 imposes duties on one person for someone else's benefit (here the employer becomes obligated not to fire employees for an improper reason). Or we could compare section 510 to a legal claim for breach of implied contract by arguing that section 510 adds an implied term (here, a bar against retaliatory discharges) to certain express or implied private contracts (here, employment relationships). Figuring out which of these provides the closer analogy isn't much better than asking whether red is more analogous to green or to yellow.

We find it more appropriate to analogize Spinelli's claim to retaliatory discharge, a tort so widely accepted in American jurisdictions today we are confident that it has become part of our evolving common law. And, wherever the tort has been recognized, it has been treated as legal and not equitable. *See Weber v. Jacobs Mfg. Co.*, 751 F.Supp. 21, 25 (D.Conn.1990) ("[Wrongful termination] actions are traditionally legal, not equitable in nature."). As such, we consider Spinelli's section 510 action a legal claim, regardless of whether we can analogize it to some action existing when the Seventh Amendment was adopted. This conclusion lets us avoid "rattling through dusty attics of ancient writs," *Terry*, 494 U.S. at 575, 110 S.Ct. at 1350 (Brennan, J. concurring), and focus instead on what really matters in the meaning and purpose of the Seventh Amendment: the living common law, which continues to evolve even as we write these words.

## B. The Nature of the Remedy

We get a different answer, however, in considering the nature of the remedy provided. By its terms, section 502—the remedies provision for section 510—provides only for equitable relief. Thus subsection (A) speaks exclusively about enjoining any practice which violates ERISA, 29 U.S.C. § 1132(a)(3)(A): Subsection (B) is even more explicit, providing only for "other appropriate equitable relief," 29 U.S.C. § 1132(a)(3)(B). The language is clear enough, but the Supreme Court last term removed any remaining doubt in *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993), which holds that damages are not available for a violation of section 502(a)(3).[3]

■ As noted, the Supreme Court has told us four times that the nature of the remedy is more important for Seventh Amendment purposes than the nature of the right. Where, as here, the two conflict, we conclude that the equitable nature of the relief is dispositive, unless Congress lacks the power to so limit the remedies available for violations of section 510. Spinelli makes two arguments to this effect. First, citing *Granfinanciera* and *Terry*, Spinelli argues that Congress cannot simply transform an otherwise legal claim into an equitable one by statutory fiat. Second, she argues that because her claim under section 502(a)(3) preempts her indisputably legal claim for retaliatory discharge under Nevada law, it is a direct substitute for the state claim; as a result, she's entitled to the jury trial she would have received had she been able to bring her suit under state law.[4]

We reject Spinelli's first argument because we see nothing in *Terry*, *Granfinanciera*, the Seventh Amendment, or anywhere else which prevents Congress from creating a cause of action for which only equitable relief is available. Such a statutory creation does not represent the sort of "purely taxonomic change" which the court rejected in *Granfinanciera*, 492 U.S. at 61, 109 S.Ct. at 2800 (reconstituting common law fraudulent conveyance action as part of the bankruptcy code doesn't convert it to an equitable action). The rights and remedies provided under ERISA are not merely a repackaging of existing rights. The right of an employee not to be discharged for exercising rights under ERISA has no precursor under federal law; the Seventh Amendment does not speak to whether a new cause of action must be legal or equitable. Insofar as section 510 displaces existing rights available under state law—as it well may—it does not merely rela-

---

**3.** Prior to *Mertens*, language at the very end of *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), could possibly have been read as allowing federal courts to award compensatory and punitive damages under section 502(a)(3), *id.* at 145, 111 S.Ct. at 486, both of which are normally considered legal remedies. We must deem this language, which was unnecessary to the result in *Ingersoll–Rand* in any event, superseded by *Mertens*.

**4.** Nevada state law, Spinelli points out, probably would have sustained a claim for retaliatory discharge for exercise of rights she held under federal law. *See K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987); *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984). However, ERISA preempts that cause of action. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that ERISA preempts state common law and contract actions even when state action authorizes remedy unavailable under federal provision).

bel those rights by calling them equitable while leaving in place their essentially legal character. By limiting the remedies to those available in equity, Congress has changed what the dispute is about. Damages, which are the heart of many civil disputes, have been made unavailable. Instead, the plaintiff may obtain only those more flexible and discretionary remedies available to a court of equity. *Mertens*, — U.S. at ——, 113 S.Ct. at 2069. This is far more than a cosmetic change and the Seventh Amendment does not stand in the way.

■ Spinelli also argues that Congress may not take away a plaintiff's legal claim under state law and replace it with a federal claim that is only equitable in nature. But we fail to see any constitutional impediment to such action. Congress surely can preempt a state cause of action, be it legal or equitable: This is the very nature of federal supremacy.[5] Once Congress has chosen to preempt the state claim, it's free to give affected individuals a full federal claim, a claim providing only for remedies limited to equity, a damages claim only, or no claim at all. The Seventh Amendment, again, does not stand in the way.

### IV

We conclude that Congress could properly limit Spinelli's remedies under ERISA to those available in equity. Having done so, it created a right that is essentially equitable in nature. Therefore a jury trial was not required. As Spinelli raises no other issues on appeal, the judgment of the trial court is

**AFFIRMED.**

---

5. It is possible that, if Congress preempts a valuable state right, its actions may amount to a taking for which compensation is available in the appropriate forum. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986; 1019, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984); *see also* 28 U.S.C. § 1491. Complicating any takings claim here is the fact that Congress has provided something valuable in exchange for the preempted state right, namely the federal equitable claim. *But see Whitney Benefits, Inc. v. United States,* 752 F.2d 1554 (Fed.Cir.1985) (even though statute offers "exchange program" giving new land to those whose land is taken, statute does not provide just compensation). There is also the fact that Spinelli's state cause of action for retaliatory discharge would have been based on the exercise of federal rights, specifically those established by ERISA. Since ERISA itself is the preempting statute, it is unclear to what extent, if any, it can also be the basis of a takings claim.