sentative of the estate, but that could not make him a trustee within the meaning of § 546(a)(1) or change the statutory language to include § 1123(b)(3) estate representatives who are neither trustees nor debtors-in-possession.

Nor do the order and the virtually identical corresponding provisions of the plan expressly provide that Starzynski would have two years from the date of appointment to file the actions, and the phrase "without limitation" in the order cannot reasonably be read to do so, especially in light of the bankruptcy court's subsequent ruling that the statute of limitations expired before Starzynski filed the actions. Moreover, it is questionable whether the plan could extend the period during which preference actions could be filed, which is provided by statute. *See In re Millers Cove Energy Co.,* 179 B.R. 77, 85 (Bankr.E.D.Tenn.1995) (§ 546(a) is a jurisdictional provision); *In re Calvanese,* 169 B.R. 104, 113–14 (Bankr.E.D.Pa.1994) (§ 546(a)(1) is a statute of repose that cannot be extended by a plan). *But see, e.g., Matter of Texas General Petroleum Corp.,* 52 F.3d 1330, 1337–38 (5th Cir.1995) (§ 546(a) is not jurisdictional); *Iron–Oak Supply,* 162 B.R. at 307 (§ 546(a) not a statute of repose); *In re Shape,* 138 B.R. 334, 337–38 (Bankr.D.Me. 1992) (§ 546(a) not jurisdictional and may be extended by agreement).

AFFIRMED.

**Cheryl R. ZIMMERMAN, Plaintiff–Appellant,**

v.

**SLOSS EQUIPMENT, INC., S & N Enterprises, Inc., Richard Sloss, Defendants–Appellees.**

No. 93–3386.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1995.

Mark A. Buchanan, of The Popham Law Firm, P.C., Kansas City, Missouri, for Plaintiff–Appellant.

William M. Modrcin (S. Margene Childress with him on the brief), of Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, Missouri, for Defendants–Appellees.

Before SEYMOUR, Chief Judge, SETH, Senior Circuit Judge, and KANE,* Senior District Judge.

SEYMOUR, Chief Judge.

Cheryl Zimmerman brought this action for damages under section 510 of ERISA, 29 U.S.C. § 1140, alleging that defendants discriminated against her and discharged her to avoid paying for her medical benefits. In a pretrial ruling, the district court denied her request for a jury trial and held that she was not entitled to extra-contractual damages. *Zimmerman v. Sloss Equipment, Inc.,* 835 F.Supp. 1283 (D.Kan.1993). Following a trial to the bench, the court denied Ms. Zimmerman relief, finding that she had not been discharged and that she lacked health insurance due to her own failure to complete the application. Ms. Zimmerman appeals. We affirm.

I.

On August 24, 1990, Ms. Zimmerman was hired as a full-time secretary and receptionist by defendants Sloss Equipment, Inc. and S & N Enterprises, Inc. Sloss Equipment leases and sells trash compaction equipment. S & N Enterprises owns the equipment leased by Sloss Equipment. The corporations maintain their offices at the same site.

Before Ms. Zimmerman was hired, the two corporations had three employees: Richard Sloss, Chase Nixon, and Wallace McIntyre. Mr. Sloss was president, chief executive officer, and sole stockholder of Sloss Equipment. Mr. McIntyre was vice president of Sloss Equipment and administrator of the group insurance plan. Mr. Nixon was the president of S & N Enterprises. Mr. Sloss was S & N Enterprises' vice president and chief executive officer. Mr. Nixon and Mr. Sloss jointly owned S & N Enterprises.

S & N Enterprises purchased group health insurance from Employers Health Insurance Company through the Lockton Insurance Agency. The policy was effective from June 1, 1990. Lockton's Manager of Client Services, Donna Sherrow, handled the transaction.

Ms. Zimmerman contends she was told when she was hired that she would receive insurance benefits under defendants' health insurance plan after sixty days of employment. She claims she completed her application and assumed she was insured. Ms. Sherrow received an incomplete application

* The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

in the mail from Ms. Zimmerman in early October, 1990. The evidence is conflicting about whether and when Ms. Zimmerman was informed she had failed to complete the application, and whether she was subsequently sent the application to finish.

Months later, Ms. Zimmerman became very sick. On January 10, 1991, she was admitted to Humana Hospital in Overland Park, Kansas. According to Ms. Zimmerman, she called Mr. Nixon on January 28 to inquire about her health insurance, and in that conversation he fired her and told her she had no health insurance coverage. Ms. Zimmerman called Mr. McIntyre on February 1. She says he told her she was not fired. However, Ms. Zimmerman asserts that in a phone conversation with Mr. Sloss later that day, he told her she was never offered health insurance and she would "never get another dime" from him.

Defendants tell a different story. They argue that Ms. Zimmerman did not receive medical insurance because she failed to complete the application. Defendants deny they interfered with Ms. Zimmerman's attempts to obtain insurance. Indeed, defendants deny that Mr. Nixon fired Ms. Zimmerman on January 28, or that she was fired at all. They maintain they held a job open for her for five months after her hospitalization but she did not return to work.

Following a trial, the district court entered judgment for defendants. The court rejected Ms. Zimmerman's account of the telephone conversations with Mr. Nixon and Mr. Sloss. The court found that she was not terminated and that defendants did not make the comments she attributed to them. The court believed Mr. Sloss told Ms. Zimmerman in the February 1 phone call that she was not fired and that she should concentrate on getting well and coming back to work.

On appeal, Ms. Zimmerman asserts the district court erred in four ways. First, she contends the court erroneously found she failed to establish a prima facie case of discrimination. Second, she asserts defendants should have been collaterally estopped from arguing she was not fired. Third, she contends the court erred in ruling she could not collect extra-contractual damages. Fourth, she argues the court erroneously failed to grant her a trial by jury.

## II.

■ Ms. Zimmerman challenges the district court's findings of facts as clearly erroneous. She contends she proved that defendants discriminated against her. We review the district court's findings of fact under the clearly erroneous standard. *Salve Regina College v. Russell*, 499 U.S. 225, 233, 111 S.Ct. 1217, 1222, 113 L.Ed.2d 190 (1991); *Federal Deposit Ins. Corp. v. Oldenburg*, 38 F.3d 1119, 1122 (10th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995). "A finding of fact is not clearly erroneous unless 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'" *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987)). "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Ms. Zimmerman and defendants recounted dramatically different versions of the events that led to the present action. In Ms. Zimmerman's story, she did everything she was told to obtain health insurance, and worked for months with the understanding that she was indeed insured only to be fired and denied benefits when she became sick. In defendants' account, Ms. Zimmerman simply failed to complete her application for insurance, perhaps because she suspected she would be denied coverage on the basis of her recent medical history, and then declined to return to her job after her hospital stay. Ample testimony from each side supported each version of the events. No surviving documents establish the veracity of either account. The case was essentially Ms. Zimmerman's word against that of defendants.

The district court heard this testimony at trial and believed defendants' explanation. In particular, the court found that Ms. Zimmerman never returned a completed application to the Lockton Agency or to defendants, and that Mr. Nixon did not terminate Ms. Zimmerman in their telephone conversation.

Ms. Zimmerman essentially argues on appeal that the court got it wrong. She invites us to reassess the credibility of the testimony in front of the district court, which we will not do. There was considerable support for the court's findings of fact, and we are not persuaded those findings are clearly erroneous.

### III.

After the disputed January 28 telephone conversation between Ms. Zimmerman and Mr. Nixon, Ms. Zimmerman sought unemployment benefits from the state of Kansas. Her application was denied, and she appealed in state court. Following remand, the Employment Security Board of Review found that Ms. Zimmerman was discharged by Mr. Nixon in the telephone conversation and that the discharge was not based on misconduct. Ms. Zimmerman now contends the state agency's decision precludes defendants from arguing she was not discharged.

"[W]hen a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *see also Ruyle v. Continental Oil Co.,* 44 F.3d 837, 843 (10th Cir. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 272, 133 L.Ed.2d 193 (1995). The Kansas Supreme Court has determined that the doctrines of res judicata and collateral estoppel apply to administrative decisions when the agency is acting in a judicial capacity and when its proceedings provide procedural protections similar to court proceedings. *Neunzig v. Seaman U.S.D. No. 345,* 722 P.2d 569, 573–74 (1986).

To support her collateral estoppel argument, Ms. Zimmerman relies on *Murphy v. Silver Creek Oil & Gas, Inc.,* 17 Kan.App.2d 213, 837 P.2d 1319 (1992), in which the Kansas Court of Appeals held that a plaintiff in a tort action was collaterally estopped from contending he was not an employee by a prior determination in a workers compensation proceeding that he was an employee. Defendants rely on *Gutierrez v. Board of County Comm'rs,* 791 F.Supp 1529 (D.Kan. 1992), in which a federal district court held that Kansas courts would not give preclusive effect to an unemployment compensation referee's factual determinations. *Id.* at 1533. *Gutierrez* found several features that distinguish an unemployment benefits hearing from a judicial proceeding, including the purposes of the respective proceedings. *Id.; see also Nickens v. W.W. Grainger, Inc.,* 645 F.Supp. 569, 571 (W.D.Mo.1986) ("[T]he parties lack the incentive to litigate in the unemployment compensation hearing the issues that are subject to litigation in a subsequent Section 1981 action."). Moreover, *Gutierrez* delineated procedural differences between unemployment benefits proceedings and court hearings.

We decline to resolve any apparent conflict between *Murphy* and *Gutierrez* because Ms. Zimmerman has not met her burden under Kansas law. The party asserting collateral estoppel must establish that "the requirements of the doctrine [were] met and the proceeding [in front of the administrative agency was] judicial in nature," which in turn depends on whether there were "sufficient due process protections." *Murphy,* 837 P.2d at 1321. At trial, counsel for Ms. Zimmerman moved to introduce a copy of the final decision of the Employment Security Board of Review, asserting: "We believe this amounts to collateral estoppel and this court can in fact hold as a matter of law as that agency did that she was discharged, but not for cause as they conclude that." Aplt.App., vol. I at 100. Defendants objected, citing *Gutierrez.* The district court refused to admit the exhibit. Ms. Zimmerman did not cite *Murphy* to the district court, nor did she

offer to explain in the face of *Gutierrez* how the Kansas unemployment compensation proceedings meet the requirements set out in *Neunzig.* On appeal, Ms. Zimmerman cites *Murphy,* ignores *Gutierrez,* and simply asserts that collateral estoppel applies. Under these circumstances, we decline to reverse the district court's ruling that defendants were not collaterally estopped from arguing they did not fire Ms. Zimmerman.

## IV.

 Ms. Zimmerman also appeals the district court's ruling that she could not seek extra-contractual damages. In addition to the payment of benefits due her under the plan and equitable relief, she seeks punitive damages and damages for emotional distress arising from defendants' alleged violation of section 510 of ERISA. *See Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 824 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). This is a question of law which we review de novo. *United States v. Martinez–Cigarroa,* 44 F.3d 908, 910 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1386, 131 L.Ed.2d 238 (1995).

 Civil remedies for violation of ERISA are provided in section 502, 29 U.S.C. § 1132. "ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 108, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). Under subsection 502(a)(1)(B), a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Subsection 502(a)(3)(B) authorizes civil actions "to obtain other appropriate equitable relief to (i) redress ... violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The Supreme Court has strongly suggested that ERISA does not permit extra-contractual damages. Although *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), did not directly address subsection 502(a)(3)(B), it generally explained the remedies available in section 502(a):

The six carefully integrated civil enforcement provisions found in § 502(a) as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." ...

We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA. As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis,* [444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146] [ (1979) ], "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."

. . . . .

In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, there is a stark absence—in the statute itself and in its legislative history—of any reference to an intention to authorize the recovery of extracontractual damages.

*Id.* at 146–48, 105 S.Ct. at 3092–93 (citations and footnote omitted).

Ms. Zimmerman relies on language in the Supreme Court's subsequent decision in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). *Ingersoll–Rand* assessed whether ERISA "pre-empts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA." *Id.* at 135, 111 S.Ct. at 481. The Texas Supreme Court had distinguished McClendon's case from others holding such claims pre-empted "on the basis that McClendon was '*not* seeking lost *pension benefits* but [was] instead seeking lost future wages, mental anguish and punitive damages as a result of the wrongful discharge.'" *Id.* at 136, 111 S.Ct. at 481 (alteration in original) (quoting 779 S.W.2d 69, 71 n. 3 (Tex.1989)).

The Supreme Court held that ERISA preempted the Texas cause of action both expressly, *id.* at 138–42, 111 S.Ct. at 482–85, and because the two statutes were in direct conflict, *id.* at 142–45, 111 S.Ct. at 484–86. As in the present case, "§ 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Id.* at 143, 111 S.Ct. at 485. The Court pointed out that it had previously held section 502(a) "to be the exclusive remedy for rights guaranteed under ERISA," *id.* at 144, 111 S.Ct. at 485 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987)), and concluded that the existence of this exclusive remedy warranted pre-emption in the case before it. In noting that the Texas court had failed to distinguish the case as outside "ERISA's purview," the Court added:

> Not only is § 502(a) the exclusive remedy for vindicating § 510–protected rights, but there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide.

*Id.* at 145, 111 S.Ct. at 486. Ms. Zimmerman contends this language permits us to fashion ERISA remedies beyond the provision of unpaid benefits.[1]

This interpretation of *Ingersoll–Rand* is foreclosed by prior decisions of this court. We have previously held that punitive damages are not available in an ERISA action. *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 888 n. 2 (10th Cir.1988). We have also held that nothing in section 502(a)(1)(B) supports damages beyond that section's language authorizing recovery of "benefits due ... under the terms of the plan." *See Alexander v. Anheuser–Busch Companies, Inc.,* 990 F.2d 536, 539 (10th Cir.1993); *see also Harsch v. Eisenberg,* 956 F.2d 651, 654–55 (7th Cir.) ("Any other conclusion would appear to be at odds with the plain meaning of the Supreme Court's statements in *Russell* ... [and] would also seem to do some violence to the language of section 502(a)(1)(B)...."), *cert. denied,* 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). Moreover, we have ruled that compensatory damages are not available under section 502(a)(3)(B). *Lafoy v. HMO Colorado,* 988 F.2d 97, 99–101 (10th Cir.1993); *see also Walter v. International Ass'n of Machinists Pension Fund,* 949 F.2d 310, 316 (10th Cir. 1991) ("ERISA does not provide a private cause of action for damages to compensate a pensioner for delay."). We held in *Lafoy* that although "allowing extra-contractual relief may be supportable on grounds of policy and justice, ... the plain language of the statute, the legislative history, and the majority's ruling in *Russell* counsel otherwise." 988 F.2d at 101. Although we did not expressly mention *Ingersoll–Rand* in *Lafoy,* we explicitly "adopt[ed] the reasoning recently applied by the Seventh Circuit" in *Harsch.*

---

1. Some courts have indeed held that *Ingersoll–Rand* overruled *Russell* and the decisions which followed it. *See East v. Long,* 785 F.Supp. 941, 942–44 (N.D.Ala.1992); *International Union of United Automobile Workers v. Midland Steel Prods. Co.,* 771 F.Supp. 860, 863 (N.D.Ohio 1991) ("The Supreme Court's holding in *Ingersoll–Rand* ... conclusively establishes the availability of legal remedies under ERISA."); *Blue Cross & Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345 (N.D.Ala.1990); *Haywood v. Russell Corp.,* 584 So.2d 1291, 1297 (Ala.1991) ("*Ingersoll–Rand* ... specifically held that the courts are authorized to award damages, both extracontractual, and even punitive, where the facts support them, even though they are not specifically provided for in ERISA."). A number of courts have reached the contrary conclusion. *Harsch v. Eisenberg,* 956 F.2d 651, 660 (7th Cir.1992) ("[W]e are not rash enough to believe that the Court intended to overrule settled law in most of the circuits, as well as narrowly limit—if not overrule—its own decision in *Russell* in such an off-hand manner."); *cert. denied,* 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819 (11th Cir. 1991); *O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833, 834 (S.D.N.Y.1991) ("Had Justice O'Connor intended ... [to] overrul[e] the considerable amount of federal caselaw barring punitive and extra-contractual damages under ERISA ..., she undoubtedly would have so stated."). *See also Richards v. General Motors Corp.,* 991 F.2d 1227, 1231 (6th Cir.1993) (noting that while the majority of courts have extended the Supreme Court's holding in *Russell* to prohibit *any* fiduciary provisions of ERISA,.... *Warren* ... found a narrow exception to this rule); *Warren v. Society National Bank,* 905 F.2d 975 (6th Cir.1990) (permitting damages where defendant, by violating an express contractual agreement, subjected plaintiff to tax liability), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991).

*Id.* at 99. The court in *Harsch* considered at length the interpretation of *Ingersoll–Rand* proposed by Ms. Zimmerman and rejected it: "we are not rash enough to believe that the Court intended to overrule settled law in most of the circuits, as well as narrowly limit—if not overrule—its own decision in *Russell* in such an off-hand manner." 956 F.2d at 659–60.

Ms. Zimmerman's reading of *Ingersoll–Rand* is further undermined by the Supreme Court's recent opinion in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), which limited ERISA remedies without reference to the disputed language at the end of *Ingersoll–Rand.* The Court held there that section 502(a)(3) does not authorize suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. *Id.* at ———, 113 S.Ct. at 2066–72. As the Ninth Circuit has noted, *Mertens* effectively confirms that the *Ingersoll–Rand* dicta cannot support the provision of compensatory damages under section 502(a)(3). *See Spinelli v. Gaughan*, 12 F.3d 853, 857 n. 3 (9th Cir.1993).[2]

We affirm the district court's ruling that Ms. Zimmerman cannot recover punitive damages and compensatory damages for emotional distress.

### V.

Ms. Zimmerman also argues that the district court erred when it denied her a jury trial. We review this question of law de novo.

As the district court noted, ERISA does not specify whether cases arising under section 502 or section 510 are to be tried by a jury.[3] Neither the Supreme Court nor this circuit has decided whether an ERISA plaintiff is entitled to a trial by jury, but at least eight circuits have held there is no such right. *See Howard v. Parisian, Inc.*, 807 F.2d 1560, 1567 (11th Cir.1987); *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 46–47 (3rd Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006–07 (4th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Katsaros v. Cody*, 744 F.2d 270, 278–79 (2nd Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *In re Vorpahl*, 695 F.2d 318, 321–22 (8th Cir.1982); *Calamia v. Spivey*, 632 F.2d 1235, 1238 (5th Cir.1980); *Wardle v. Central States Pension Fund*, 627 F.2d 820, 829–30 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Nonetheless, some district courts have allowed jury trials. *See Algie v. RCA Global Communications*, 891 F.Supp. 875 (S.D.N.Y.1994); *Steeples v. Time Ins. Co.*, 139 F.R.D. 688, 693–94 (N.D.Okl. 1991); *Blue Cross & Blue Shield of Alabama v. Lewis*, 753 F.Supp. 345 (N.D.Ala.1990); *Rhodes v. Piggly Wiggly Alabama Distrib. Co.*, 741 F.Supp. 1542 (N.D.Ala.1990); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882 (S.D.N.Y.1990). Many of the courts denying jury trials reasoned that such trials were incompatible with the application of the arbitrary and capricious standard of review, *see, e.g., Wardle*, 627 F.2d at 830, a consideration which no longer applies now that denial of benefits is subject to de novo review under *Firestone.*

Against this weight of authority, Ms. Zimmerman offers two arguments. First, she

---

2. *Mertens* bars suits under section 502(a)(3) for money damages against nonfiduciaries, but does not answer whether money damages are available from fiduciaries. Other circuits have decided that money damages are permitted under some circumstances. *See Bixler v. Central Penn. Teamsters Health–Welfare Fund*, 12 F.3d 1292, 1298–1300 (3d Cir.1993); *Warren v. Society Nat'l Bank*, 905 F.2d 975, 978–83 (6th Cir.1990), *cert. denied*, 500 U.S. 952, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991); *Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 230 (7th Cir.1990) (acknowledging but not deciding that monetary damages may be available under section 502(a)(3)(B) for breach of fiduciary duty). This position is articulated in Justice Brennan's concurrence in *Russell*, 473 U.S. at 148–58, 105 S.Ct. at 3093–98. Because Ms. Zimmerman did not raise this argument, we need not address it.

3. Nor does the legislative history provide any guidance. "Congress expressed no opinion on the mode of trial intended for plan-enforcement actions." Note, *The Right to Jury Trial in Enforcement Actions Under Section 502(a)(1)(B) of ERISA*, 96 Harv.L.Rev. 737, 738, 741–43 (1983).

contends that because *Ingersoll–Rand* authorizes compensatory damages, the right to a jury trial follows. Since we have determined in Part IV *supra* that Ms. Zimmerman cannot recover extracontractual damages, this argument is unavailing. *See Spinelli,* 12 F.3d at 857–58.

In her appellate reply brief, Ms. Zimmerman also argues, relying upon the Supreme Court's decision in *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), that Congress cannot deny her rights to a jury trial for the determination of her private cause of action, presumably here her action for breach of contract under Kansas law as preempted by ERISA. *See id.* at 49–55, 109 S.Ct. at 2794–97 ("Congress may devise novel causes of action.... But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury.... [T]o hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee...."); *see also Vicinanzo,* 739 F.Supp. at 889–90 ("This recognition of the true force of the Seventh Amendment suggests doctrinal change affecting a host of federal statutes that do not involve the adjudication of 'public rights' by non-Article III tribunals."). *But see Spinelli,* 12 F.3d at 857 ("The rights and remedies provided under ERISA are not merely a repackaging of existing rights."); *id.* at 858 (ruling that the Supremacy Clause permits Congress to preempt state legal claim without providing a jury trial); *Blake v. Unionmutual Stock Life Ins. Co. of Amer.,* 906 F.2d 1525, 1526–27 (11th Cir.1990) (per curiam).

 We decline to reach this thorny issue because Ms. Zimmerman did not raise it in the course of this litigation until her appellate reply brief. We consider her argument waived "pursuant to the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply." *Headrick v. Rockwell Intern. Corp.,* 24 F.3d 1272, 1277–78 (10th Cir.

1994). Defendants have had no opportunity to explain *Granfinanciera*'s implications for ERISA. If we were to reach this argument we would risk "an improvident or ill-advised opinion."[4] *Herbert v. National Academy of Sciences,* 974 F.2d 192, 196 (D.C.Cir.1992).

We affirm the district court's order denying Ms. Zimmerman a jury trial. For the foregoing reasons, the judgment of the district court in favor of defendants is

**AFFIRMED.**

---

4. Similarly, we also decline to consider Ms. Zimmerman's efforts to apply *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), and *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), which were first raised in her appellate reply brief.