83 F.3d 433
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert J. SCHERMAN, Plaintiff--Appellant,
Cross--Appellee,
v.
KANSAS CITY AVIATION CENTER, INC., Defendant-Appellee, Cross-Appellant,
v.
LIBERTY AIR POWER, INC. Third-Party-Defendant,
and
CARDIAC SYSTEMS, INC. Third-Party-Defendant-Appellee.
 Nos. 94-3328, 94-3329.
 United States Court of Appeals, Tenth Circuit.
 April 23, 1996.
 
 Before TACHA, McWILLIAMS, and HENRY, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 This diversity action arises from Kansas City Aviation Center's (KCAC) failure to supply an airplane that it had contracted to sell to Robert J. Scherman. Scherman sued KCAC for breach of contract and prevailed on summary judgment on the liability issue. After a bench trial to determine damages, the district court held that Scherman failed to mitigate his damages, and that consequently he was not entitled to cover damages under Kan. Stat. Ann. § 84-2-712. Our jurisdiction arises under 21 U.S.C. § 1291, and we affirm.
 
 
 2
 On May 20, 1991, Scherman contracted with KCAC to buy a 1977 single-engine airplane, serial number 501-0267 (Plane 267), for $985,000. The contract price included a Phase 1-5 inspection, which cost approximately $10,000. At the time of the agreement KCAC did not own the plane, but had contracted to purchase it from its owner, Cardiac Systems, Inc. (Cardiac), through Liberty Air Power, Inc. (Liberty). Liberty purported to be Cardiac's broker for selling the plane. On May 23, however, Cardiac sold the plane to Eagle Aviation, Inc. (Eagle), a third party not involved in this litigation.
 
 
 3
 Prior to contracting with KCAC, Scherman had registered as a buyer with Eagle. Upon purchasing Plane 267, Eagle offered to sell the plane to Scherman for $975,000, without the Phase 1-5 inspection. Scherman refused the offer. The next day, May 24, Eagle offered to sell the plane with a Phase 1-5 inspection for $987,500. Scherman refused this offer as well. That same day KCAC contacted Scherman, assuring him that KCAC would procure either Plane 267 or an acceptable substitute, and asking Scherman for time to do so. KCAC also asked Scherman to send two letters, one to Eagle and one to Cardiac, stating that Scherman had never authorized Eagle to register him as its exclusive customer or to act on his behalf, stating that Scherman had contracted to purchase Plane 267 from KCAC, and asking Eagle to cancel its customer registration of Scherman. Scherman mailed these letters on May 28.
 
 
 4
 On May 26 or May 27, Scherman's attorney advised him not to deal with Eagle because he had a contract with KCAC. On May 30, Scherman's attorney sent a letter to KCAC, demanding that KCAC provide Plane 267 or a suitable substitute at the same price. During the month of June, KCAC offered to sell Scherman three substitute planes, all of which cost more than Plane 267. Scherman rejected all three offers. On June 20, Scherman's attorney sent a final demand letter to KCAC, again requesting that KCAC provide a suitable substitute plane at the same price as the contract price for Plane 267.
 
 
 5
 On July 11, Scherman purchased a plane comparable to Plane 267 for $1,067,334. On July 16, he wrote to KCAC demanding compensation for costs incurred in buying the substitute plane. Scherman then brought this action against KCAC for breach of contract. KCAC impleaded Liberty and Cardiac as third-party defendants. The district court granted summary judgment in favor of Scherman, finding KCAC to be liable for breach of contract, and held a bench trial to determine damages. At trial, Scherman argued that he was entitled to the cost of cover (the difference between the cover price and the contract price) plus incidental and consequential damages. A buyer is entitled to such recovery as long as she acts to mitigate damages in good faith and in a reasonable manner:
 
 
 6
 After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
 
 
 7
 Kan. Stat. Ann. § 84-2-712(l).
 
 
 8
 The court found that by refusing both offers to purchase Plane 267 from Eagle, Scherman did not make a reasonable and good faith attempt to acquire a substitute plane. The court held that the contract was for a specific, non-fungible good--Plane 267. Because it was clear by May 24 that KCAC would not be able to acquire that specific plane, the court held that Scherman's reliance on assurances from KCAC that it would furnish the plane or a suitable substitute was unreasonable.
 
 
 9
 Although the court held that Scherman was not entitled to cover damages, the court awarded him damages for nondelivery under Kan. Stat. Ann. § 84-2-713. Damages for nondelivery are the difference between the contract price and the fair market value at the time the buyer learns of the breach. The court determined that Scherman learned of the breach on May 24, the date of Eagle's second offer, and decided that the fair market value on May 24 was $987,500, Eagle's asking price on that day. Thus, the court awarded Scherman total damages of $2,500, the difference between the contract price of $985,000 and the fair market value of $987,500. The court further held that KCAC could recover from Cardiac the expense of the judgment awarded to Scherman. Scherman now appeals the damages award. KCAC cross-appeals, arguing that the court erred in determining the plane's market price at the time Scherman learned of the breach. Cardiac also submitted a brief as a third-party defendant, arguing that it should not be liable for any increase in the damages award.
 
 
 10
 We begin by reviewing the district court's interpretation of the contract de novo. Pendleton v. Conoco, Inc., 23 F.3d 281, 286 (10th Cir.1994). The contract specifically stated that the subject of the agreement was Plane 267. Because the contract was not for the purchase of fungible goods but for a specific airplane, we agree with the district court's interpretation of the contract as an agreement to purchase a specific, non-fungible good.
 
 
 11
 Next we review the district court's determination that Scherman acted unreasonably and without good faith in rejecting Eagle's offers to sell Plane 267. We review this finding of fact for clear error. Zimmerman v. Sloss Equip., Inc., 72 F.3d 822, 825 (10th Cir.1995). The Kansas Comment to § 84-2-712 states that the cover statute "seeks to place [the] buyer in the economic position he would have been in had the contract been performed." In this statute, the words "good faith" mean "honesty in fact in the conduct or transaction concerned." Kan. Stat. Ann. § 84-1-201(19). This definition "is subjective, and requires only honesty in fact." Kansas Comment to Kan. Stat. Ann § 84-1-201(19). Scherman argues that his failure to buy Plane 267 from Eagle was a result of his reasonable and good-faith reliance on KCAC's promise to supply Plane 267 or a suitable substitute. He contends that this promise amounted to an assumption by KCAC of his duty to mitigate damages. Thus, Scherman argues, KCAC's promise released him from his obligation under the statute to purchase Plane 267 from Eagle and that he acted reasonably and in good faith by purchasing another suitable, though more expensive, plane from another source.
 
 
 12
 The contract was an agreement to purchase a specific, non-fungible good, Plane 267. Thus Scherman's reliance on KCAC's promise was only reasonable and in good faith if it was likely that KCAC could secure the plane and deliver it to Scherman. The contract did not specify a delivery date, but it was clear by May 24, the date of Eagle's second offer and the day after Eagle purchased Plane 267 from Cardiac, that KCAC would be unable to acquire Plane 267. Scherman had two opportunities to purchase Plane 267 from Eagle for only slightly more than the contract price. Because Scherman could have purchased from another vendor the very plane which he had contracted to buy from KCAC, we cannot see how KCAC could be said to have assumed Scherman's duty to mitigate.
 
 
 13
 Scherman cites Cates v. Morgan Portable Building Corp., 780 F.2d 683 (7th Cir.1985) to support his argument that KCAC assumed his duty to mitigate by assuring him that it would provide Plane 267 or a substitute. In Cates, plaintiff Cates hired defendant Morgan to install portable buildings. The buildings were defective, but Morgan promised to fix them. Morgan began repairs, but continued fixing the buildings only sporadically. The repair work eventually stopped, and Cates sued. Morgan argued that Cates should have mitigated the damages by taking steps to repair the buildings himself. The Seventh Circuit held that "the seller may not insist on mitigation when by its words or deeds it has led the buyer to believe that it has assumed what would otherwise be the buyer's burden of mitigation." Id. at 687. Cates is inapplicable here, however, because the defendant in that case was capable of curing its defective performance, and thus assuming the plaintiff's duty to mitigate, by repairing the buildings. In this case, the only way KCAC could have mitigated Scherman's damages was to acquire Plane 267. Because of his involvement with Eagle both before and after its two offers to sell the plane to him, Scherman clearly knew that KCAC could not mitigate damages by acquiring Plane 267. We hold that the district court's conclusion that Scherman acted unreasonably and without good faith in declining to purchase the plane from Eagle was not clearly erroneous.
 
 
 14
 Although Scherman is not entitled to cover damages, the district court correctly concluded that he could recover damages for nondelivery, which is the fair market value of the plane when the buyer learned of the breach, less the price of the contract, together with any incidental and consequential damages. Kan. Stat. Ann. § 84-2-713. The district court determined that Scherman learned of the breach on May 24. That determination is a question of fact, which we review for clear error. See Zimmerman, 72 F.3d at 825. KCAC argues that Scherman learned of the breach on May 23, the day that Eagle purchased Plane 267 and the day of Eagle's first offer to Scherman. KCAC contends that the fair market value of the plane on that day was $985,173: the sum of Eagle's asking price ($975,000) and the cost of inspection ($10,173). Thus KCAC claims that Scherman is entitled to $173: the difference between the contract price ($985,000) and the fair market value on May 23 ($985,173).
 
 
 15
 The district court determined that by May 24 it was clear that Eagle owned Plane 267 and that KCAC would not be able to fulfill its obligation under the contract to deliver the plane. On May 24, Eagle offered the plane, with inspection, to Scherman for $987,500. Using this figure as the fair market value, the district court awarded Scherman $2,500, the difference between the contract price, $985,000, and the fair market value, $987,500. Although it is a close question whether Scherman learned of the breach on May 23 or May 24, we cannot say that the district court's determination was clearly erroneous.
 
 
 16
 In sum, we hold that the district court's finding that Scherman acted unreasonably and without good faith when he failed to mitigate his damages by purchasing Plane 267 from Eagle was not clearly erroneous. Consequently, the district court did not err when it refused to award cover damages. We further hold that the district court did not err when it determined that Scherman learned of the breach on May 24. Because we do not disturb the district court's damage award, we need not address Cardiac's argument that it should not be liable for any increase in damages. All of the decisions of the district court in this matter are AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3